The Preliminary Decision and Order below is hereby signed.  Dated: September 1, 2006.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARK WRIGHT, | ) | Case No. 05-00626 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MARK WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 06-10025 |
| BUREAU OF INDIAN AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

PRELIMINARY DECISION AND ORDER RE MOTION FOR DEFAULT JUDGMENT

At the evidentiary hearing held on August 30, 2006, on the plaintiff's motion for default judgment, no one appeared from the United States Attorney's office to represent the Government's interests.

The plaintiff Wright appeared and in his testimony raised additional payments, not pled in his complaint, made on debts owed to or guaranteed by the Bureau of Indian Affairs (the "Bureau") and stated that he now seeks to recover under 11 U.S.C. §§ 362(a) (automatic stay), 522 (subsections (g), (h), and (i)) (vesting debtor with rights of trustee as to certain avoidable

transfers), 547 (preferential prepetition payments), and 549 (unauthorized postpetition transfers of property of the estate). Wright agreed to amend and re-serve his complaint to address those additional payments if he elects further to pursue them.

To memorialize what transpired at the hearing, and to guide the parties as to the further conduct of this proceeding, this preliminary decision sets forth:

- the facts laid out by the evidence adduced at the hearing (which evidence is subject to further supplementation by either party at a later stage), and
- the legal issues those facts present.

I

Wright filed his bankruptcy petition on April 20, 2005. He now claims that there are four sets of payments he may recover from the Government.

A. $2,692.30 in Prepetition Payroll Deductions to Repay Moving Expense Advance. During the 90-day preference period of 11 U.S.C. § 547(b), $2,692.30 was withheld from Wright's paycheck as an employee of the Bureau for moving expenses which the Bureau had advanced to him. (These are the only payments pled in the complaint.) Before the 90-day period, Wright had executed an authorization for a set amount to be deducted each payroll period from his paycheck to pay this debt owed to the Bureau. There are two components to the $2,692.30:

    1. $1,076.92 Component: Wright did not attempt to retract his authorization for payroll deductions until after

2

$1,076.92 of the $2,692.30 in payroll deductions had been made by the Bureau during the 90-day period.  That $1,076.92 was thus a voluntary payment and cannot be recovered by Wright because 11 U.S.C. § 522(g)(1)(A) requires that a payment have been made involuntarily.

 2. $1,615.38 Component: The additional $1,615.38 in payroll deductions were made after Wright called his payroll office and asked one of the payroll officers to cease the payroll deductions.  The payroll officer told Wright that this was the way that the moving expense had to be repaid and told Wright that it would not be possible to defer repayment, and accordingly declined Wright's request.  My understanding of Wright's testimony is that he did not acquiesce to the payroll officer's decision not to honor his request.  On this record, the deduction of the $1,076.92 was not paid voluntarily.

 B.  Deductions of $1,978.05 to Repay to Social Security Administration Overpayment of Social Security Benefits.  Wright's schedules in the main case reflect that he owed a disputed debt to the Social Security Administration totaling $2,853,770.00.  Out of amounts owed Wright for travel expenses, the Bureau of Indian Affairs deducted $1,978.05 in the 90-day preference period preceding the filing of his petition towards payment to the United States Treasury on account of this debt.

 C.  Postpetition Deduction from Pay of $538.46 for Debt Owed Bureau for Prepetition Advance for Moving Expense.  The Bureau

continued to collect the prepetition debt owed it (for the moving expense advance it had made to Wright) after Wright filed his petition via withholdings from his salary as an employee. Although some of those withholdings were refunded, $538.46 of such postpetition withholdings were not.  Because the automatic stay of 11 U.S.C. § 362(a) barred such collection, Wright contends he is entitled to recover that $538.46.

    D.  <u>Postpetition Payment of $1,999.04 by Wright to Bank of America on Debt Guaranteed by Bureau of Indian Affairs</u>.  Wright made a postpetition payment of $1,999.04 to Bank of America owed for a credit card obligation that he testified was guaranteed by the Bureau.  He made the payment out of his bank account only after depositing his payroll check for the prepetition two-week work period ending April 16, 2006 (accordingly, the funds were estate property).  Wright contends that this was an unauthorized transfer of estate funds that is avoidable under 11 U.S.C. § 549. He further contends that the payment was involuntary because (1) the Bureau had a policy that employees at his grade level would have their employment terminated if they were late in paying their government credit card debt and (2) his division chief and others at the Bureau told him that he would be fired if he did not pay the Bank of America debt despite his having informed them that he had filed a bankruptcy petition.

II

    The legal issues this presents are as follows.

    A. <u>$2,692.30 in Prepetition Withholdings to Pay Travel</u>

4

Advance.

    1. $1,076.92 Component. Of the $2,692.30 in payroll deductions to pay Wright's travel advance obligation, $1,076.92 was voluntarily made, and he thus is not entitled to make a recovery.

    2. $1,615.38 Component. Of the remaining $1,615.38 in payments, Wright is not entitled to prevail unless he convinces the court that the following analysis is in error. Under § 547(b)(5), Wright must show that the payment enabled the Government to receive more than it would have received had the payment not been made. A payment to a fully secured creditor does not constitute a preference because it does not enable the creditor to receive more than if the payment had not been made, and this doctrine applies when the secured status arises from a right of setoff. See, e.g., Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030, 1034 (5th Cir. 1987); Mason & Dixon Lines, Inc. v. St. Johnsbury Trucking Co. (In re Mason & Dixon Lines, Inc.), 65 B.R. 973, 977 (Bankr. M.D.N.C. 1986). Even if Wright revoked his payroll deduction authorization, the Government still had a right of setoff arising from the existence of mutual obligations because the obligations both arose prepetition. See Braniff, 814 F.2d at 1035 (setting forth requirements for setoff to exist) and 1036-37 (explaining mutuality requirement). The Government was fully secured for each dollar it collected by a right of setoff and thus no preference arose when the Government

5

effected payment.[1]

B. <u>Deductions of $1,978.05 to Repay Overpayment of Social Security Benefits to Social Security Administration</u>.  As in the case of the collection of the prepetition collection of the moving expense advance, Wright has the burden of persuading the court that as a matter of law the Government's right of setoff did not immunize from preference attack its prepetition collection of the Social Security debt from his pay.  Because the payment went to the U.S. Treasury, Wright should consider suing the United States instead of just the Bureau if he elects to pursue this further.

C. <u>Postpetition Deduction from Pay of $538.46 for Debt Owed Bureau for Prepetition Advance for Moving Expense</u>.  The postpetition collection of $538.46 of the prepetition obligation from Wright's pay may have violated the automatic stay, but it may have been a violation that did not harm Wright.  If the $538.46 was collected from amounts owed Wright for prepetition

---

[1] The Government exercised its right of setoff by withholding the $1,615.38 (through its agent the Bureau) **and** applying the $1,615.38 to the debt.  Had the Government not exercised the setoff by applying the withheld $1,615.38 to the outstanding debt, the Government would have had a right to hold the $1,615.38 in suspense as subject to a right eventually to exercise the right of setoff.  <u>See</u> <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 19-21 (1995).  The right of setoff would have been preserved upon the filing of the petition by 11 U.S.C. § 553(a), and would have given rise to an allowed secured claim under 11 U.S.C. § 506(a).  <u>Id.</u>  Upon the automatic stay of 11 U.S.C. § 553(a) terminating, the Government would have been able to exercise its right of setoff.  Accordingly, the $1,615.38 payment did not enable the Government to receive more than had the payment not been made.

work, the collection would have been of an amount for which § 553(a) preserved a right of setoff.  Absent proof of what pay period was the source of the payment withheld, Wright has not shown that he would have eventually have been entitled to receive the $538.46 based on the debt having been discharged.  If a § 553(a) right of setoff existed as to the pay from which the $538.46 was deducted, that right of setoff would be unaffected by Wright's discharge.  <u>See, e.g.</u>, <u>IRS v. Luongo (In re Luongo)</u>, 259 F.3d 323, 333 (5th Cir. 2001); <u>Davidovich v. Welton (In re Davidovich)</u>, 901 F.2d 1533, 1539 (10th Cir. 1990).  Upon termination of the automatic stay, the Government would have been free to collect the $538.46.  Without any harm to Wright having arisen, Wright would not be entitled to recover any damages arising from a technical violation of the temporary stay of the exercise of the right of setoff under 11 U.S.C. § 362(a)(7).  <u>See In re Rivera</u>, 345 B.R. 229 (Bankr. E.D. Cal. 2005).

    D.  <u>Postpetition Payment of $1,999.04 by Wright to Bank of America on Debt Guaranteed by Bureau of Indian Affairs</u>.  At the hearing, Wright appeared to contend that the $1,999.04 could be recovered by way of 11 U.S.C. § 550(a)(1).  If a trustee succeeded under 11 U.S.C. § 549 in avoiding a postpetition payment to a creditor whose claim was guaranteed by the Government, the trustee could recover the amount of the payment from the Government under 11 U.S.C. § 550(a)(1).  The Government would qualify under that provision as "the entity for whose

7

benefit such transfer was made."[2]  However, a debtor may not step into the shoes of the trustee if the payment was a voluntary payment by the debtor.  11 U.S.C. § 522(g)(1)(A).  Accordingly, to invoke § 550(a)(1), Wright must show both that he acted involuntarily when he made the postpetition payment of $1,999.04 on his Bank of America credit card obligation, and that the obligation was indeed guaranteed by the Bureau.

The Bureau might have violated 11 U.S.C. § 525 had it terminated Wright's employment for failing to pay Bank of America, but Wright nevertheless made the decision to pay the Bank of America in lieu of facing the risk of the Bureau terminating his employment.  Indeed, by making the payment to the Bank of America out of estate funds, Wright violated 11 U.S.C. § 362(a)(3) by exercising control over property of the estate.  His duty was to not touch those funds until they became exempt under 11 U.S.C. § 522(l) or were abandoned to him.  Although invading estate funds in violation of § 362(a)(3) may have suited his purposes, he had the option of not violating the statute and suffering the consequences, if any, that might follow.  A transfer made to avoid consequences that would result from not making the transfer is not by that reason an involuntary payment.

---

[2]  As noted in <u>Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey)</u>, 130 F.3d 52, 57 (2d Cir. 1997), the phrase "entity for whose benefit" in 11 U.S.C. § 550(a) "references entities that benefit as guarantors of the debtor, or otherwise, without ever holding the funds." [Citations omitted.] Accordingly, a trustee could invoke § 550(a) to recover the amount of the payment from the Government as a guarantor if it avoided the payment under § 549.

"To hold that a transfer is involuntary merely because . . . [the transferor] avoids an unpleasant consequence as a result of the transfer . . . would result in no transfer short of a gift being considered voluntary.  This result does not seem to have been intended by Congress."  Huebner v. Trapp (In re Huebner), 18 B.R. 193, 195 (Bankr. W.D. Wis. 1982).  See also Terry v. Witten & Carter, P.C. (In re Terry), 56 B.R. 538 (Bankr. D. Vt. 1986) (a transfer made to settle an actual court action (an event much further along than a mere threat of a court action to collect a debt is a voluntary transfer).  Wright may have acted under threat of consequences, but he nevertheless was free not to make the payment.

A transfer is only involuntary when it is beyond the debtor's personal control.  Redmond v. Tuttle, 698 F.2d 414, 418 (10th Cir. 1983) (citing Huebner, 18 B.R. at 195, as concluding that the "history of section 522(g) indicates that Congress intended to allow exemption of only those transfers beyond debtor's personal control.");  see also Hunter v. Snyder, 108 B.R. 150, 152-53 (Bankr. N.D. Ohio 1989); In re Trevino, 96 B.R. 608, 613 (Bankr. E.D.N.C. 1989).  Although the Bureau's threat may have been improper, Wright nevertheless was free not to make the payment, and thus the transfer was arguably not beyond his personal control.

Wright might argue that the threat of termination of employment was tantamount to the Bureau's holding a gun to his head and coercing him to make the payment, thereby rendering it

an involuntary payment.  See In re Reaves, 8 B.R. 177 (Bankr. S.D. 1981); see also In re Bloom, 28 B.R. 571, 573 (Bankr. D. Or. 1983) (stating that a "threat to take action to collect a debt **by legal means** does not constitute such coercion as to transform the voluntary grant of a security interest into an involuntary transfer of property.") (emphasis added).  Nevertheless, a threat of taking illegal action if a payment is not made, albeit something not to be encouraged, does not necessarily give rise to an involuntary payment.  Wright understood, after all, that the Bureau's threatened action would violate § 525, and he was free to pursue remedies when the threat was made and also if the Bureau persisted in that threat had he failed to make the payment.

If Wright pursues this theory of recovery, he must convince me that he acted involuntarily despite the foregoing analysis. He may also pursue relief on any alternative basis that is available to him.

### III

In light of the foregoing, it is

ORDERED that if the plaintiff elects to pursue additional claims not pled in the original complaint, then by September 29, 2006, the plaintiff shall file an amended complaint and request issuance of a new summons setting a new scheduling conference. It is further

ORDERED that if the plaintiff does not file an amended complaint by September 29, 2006, then by that date the plaintiff

10

shall file a memorandum showing cause why this adversary proceeding ought not be dismissed on the merits.

[Signed and dated above.]

Copies to:

Office of U.S. Trustee

Debtor

Debtor's counsel

Kenneth L. Wainstein, Esq.
United States Attorney
555 4th Street, NW
Washington, DC 20530

Attorney General of the United States
U.S. Dept. of Justice
Washington, DC 20530

Bureau of Indian Affairs
Dept. of the Interior
1849 C Street, NW
Washington, DC 20240